# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>EBONY L. DOUGLAS,<br><br>  Defendant. | 8:18CR87<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Findings and Recommendation (F&R), ECF No. 37, issued by Magistrate Judge Michael D. Nelson. The Magistrate Judge recommended that the Amended Motion to Suppress filed by the Defendant Ebony L. Douglas, ECF No. 18, be denied. Defendant filed an Objection to the F&R, ECF No. 39,[1] as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a). The Government responded to the Objection, ECF No. 40. For the reasons set forth below, the F&R will be adopted, and the Motion to Suppress will be denied.

## BACKGROUND

Defendant is charged with one count of possession with intent to deliver marijuana. Indictment, ECF No. 1. Defendant seeks to suppress any evidence obtained by law enforcement on December 17, 2017, asserting that Douglas County, Nebraska, Deputy Sheriff Eric Olson (Deputy Olson) lacked probable cause or reasonable suspicion to initiate a traffic stop and lacked reasonable suspicion to conduct a canine sniff of her

---

[1] Defendant filed an Objection at ECF No. 38. Defendant's Objection at ECF No. 39 states that it is the "corrected" objection. The Court has considered the Corrected Objection for purposes of this Memorandum and Order.

vehicle. Defendant did not directly object to the Magistrate Judge's factual findings. Having reviewed the record, the Court adopts those findings and provides the following by way of summary:

On December 17, 2017, Deputy Olson stopped a Chevrolet Tahoe, driven by Defendant, towing a small U-Haul trailer on Interstate 80 at about 60th Street. Deputy Olson initiated the stop because he observed the Tahoe cross into a different lane of traffic, causing another driver to swerve. According to Deputy Olson, no obstructions or hazards justified crossing into the adjacent lane.

After initiating the stop, Deputy Olson asked Defendant to return to his cruiser while he conducted a records check, reviewed Defendant's documents, and asked about her travel itinerary. Defendant said she was moving from California to Michigan, adding that her boyfriend lived in Chicago. Defendant appeared nervous and volunteered information that Deputy Olson did not ask for. The U-Haul rental agreement stated that the trailer was rented in Sacramento, California, and was scheduled to be returned in Chicago, Illinois. When asked about the drop-off location of the U-Haul trailer, Defendant stated that she did not have an exact location, but that it needed to be dropped off at the airport.

The rental agreement for the Tahoe stated that the vehicle was rented in California on December 16, 2017, and due to be returned in California on December 22, 2017. Defendant explained that the vehicle was not actually going to be returned to California because she did not have enough money for a one-way rental. However, Defendant claimed that she worked out a way to return the vehicle to Midway Airport in Chicago at an expected additional cost of $500.00 and possibly another day's rental fee.

Defendant's record check revealed no warrants or criminal history. Deputy Olson returned Defendant's documents, issued a verbal warning for the traffic violation, and told Defendant he would assist her back to the Tahoe. Defendant declined Deputy Olson's request to open the rear cargo area of the Tahoe, she also declined to give consent to a narcotic sniff of the vehicle and trailer. Deputy Olson nevertheless detained Defendant and deployed his canine around the exterior of the Tahoe and the U-Haul trailer. The canine alerted at the vehicle and indicated to the odor of narcotics at the trailer. Deputy Olson searched the Tahoe and the U-Haul trailer and found marijuana.

The Magistrate Judge concluded that Deputy Olson had probable cause to initiate the stop based on the Tahoe crossing the lane divider. The Magistrate Judge also concluded that, based on Defendant's suspicious behavior and inconsistent travel plans, Deputy Olson had reasonable suspicion to detain Defendant to conduct a canine sniff. Finally, the Magistrate Judge concluded that there was no evidence of unequal enforcement on the basis of race. Defendant objects to the Magistrate Judge's findings that (1) the initial stop was supported by probable cause and (2) that Deputy Olson had reasonable suspicion to detain Defendant.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a), the Court shall make a *de novo* review of the portions of the Magistrate's Findings and Recommendation to which objections have been made. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings and recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

**1. Probable Cause to Stop Defendant**

"A traffic violation, no matter how minor, creates probable cause for a law enforcement officer to stop [a] vehicle." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009). "[I]f an officer has reasonable suspicion or probable cause to stop for a traffic violation, 'any ulterior motivation on the officer's part is irrelevant.'" *United States v. McLemore*, 887 F.3d 861, 864 (8th Cir. 2018) (quoting *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2107 (2017). "Reasonable suspicion is 'a particularized and objective basis for suspecting the particular person stopped of breaking the law.'" *Id*. (quoting *Heien v. North Carolina*, 135 S. Ct. 530, 536, (2014)).

Under Nebraska law, "[a] vehicle shall be driven as nearly as practicable within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Neb. Rev. Stat. § 60-6,139(1). Touching or crossing a lane dividing line is not enough, on its own, to violate § 60-6,139(1). *See State v. Au*, 829 N.W.2d 695, 702 (2013). Rather, law enforcement must articulate circumstances that distinguish a driver's conduct from behavior that "happens all the time." *Id*. Such circumstances include where a driver's conduct suggests the driver may be impaired. *See id*. at 701-02.

Here, Deputy Olson articulated circumstances that justified a stop. He observed that the Tahoe's movement caused another vehicle to swerve and take corrective action. It was a clear day and there were no obstructions on the interstate, nor was there any snow, ice, debris, or potholes in the road. The stretch of interstate was not curved, nor were there any visibility problems that may have caused the Tahoe to swerve. Under

4

these circumstances, Deputy Olson acted reasonably in stopping Defendant to determine whether she was impaired. *Cf. Johnson v. Crooks*, 326 F.3d 995, 999 (8th Cir. 2003) (concluding that where circumstances may indicate that driver was impaired or fatigued, it was objectively reasonable for officer to determine if driver was competent to continue travel). Accordingly, under the circumstances, Deputy Olson had reasonable suspicion to stop Defendant under § 60-6,139(1).

Defendant argues that the Magistrate Judge failed to consider evidence that the Tahoe was equipped with lane-assist technology. According to Defendant, this technology would have corrected the Tahoe's movement and alerted Defendant had it drifted across the lane dividing line. Defendant argues that the Government failed to rebut this evidence. However, Defendant cites no authority that required the Government to rebut evidence that driver-assist technology would have prevented a lane violation. The Magistrate Judge's credibility determination as to Deputy Olson's testimony is supported by the record. Accordingly, the Court adopts the Magistrate Judge's recommendation.

### 2. Reasonable Suspicion to Detain

Under the Fourth Amendment, "an officer conducting a traffic stop who discovers information leading to reasonable suspicion of an unrelated crime may extend the stop and broaden the investigation." *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016). Absent reasonable suspicion, however, an officer may not broaden the investigation "'beyond the time reasonably required to complete the mission' of issuing a warning ticket." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a

5

way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* "A dog sniff . . . is a measure aimed at detecting evidence of ordinary criminal wrongdoing." *Id*. (citations and quotations omitted). Accordingly, detention "beyond completion of the traffic infraction investigation" must be supported by "reasonable suspicion of criminal activity." *Id*. at 1616-17.

Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *United States v. Smith*, 789 F.3d 923, 928 (8th Cir. 2015) (quoting *United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994)). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007). Law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Smith*, 789 F.3d at 928 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). As a result, "due weight must be given 'to the factual inferences drawn by the law enforcement officer.'" *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007) (quoting *Arvizu*, 534 U.S. at 277).

To establish reasonable suspicion, "'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' further investigation." *Woods*, 829 F.3d at 679 (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Although some factors may appear innocent when considered alone, "a combination of factors may give rise to reasonable suspicion." *United States v. Briasco*, 640 F.3d 857, 860 (8th Cir. 2011). "Whether the particular facts

known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *United States v. Beck*, 140 F.3d 1129, 1137 (8th Cir. 1998) (quoting *United States v. Halls*, 40 F.3d 275, 276 (8th Cir. 1994)). "However, in order to measure the totality of the circumstances, it is necessary to first break the reasonable suspicion into separate observations." *United States v. Johnson*, No. 8:16CR241, 2017 WL 933044, at *5 (D. Neb. Mar. 9, 2017) (quoting *Beck*, 140 F.3d at 1137-39 (analyzing each observation separately before combining them in a totality of the circumstances test)).

Deputy Olson, drawing upon his experience and training, had reasonable suspicion to detain Defendant and conduct a canine sniff. When asked about her travel, Defendant stated she was moving to Michigan and volunteered that her boyfriend lives in Chicago. Deputy Olson testified that her tendency to volunteer information of this nature, in his experience and training, was indicative of someone involved in criminal activity. Deputy Olson also learned that the Tahoe was rented in Sacramento, California, and was to be returned in Chicago. Deputy Olson asked why Defendant was dropping the trailer off in Chicago if she was moving to Michigan. Defendant responded that she did not yet have a drop-off location, then said she was dropping it off at an airport. Defendant's unusual and inconsistent travel plans properly contributed to Deputy Olson's reasonable suspicion. *See Beck*, 140 F.3d at 1139 (citing *United States v. Wood*, 106 F.3d 942, 946–47 (10th Cir. 1997) (noting that "unusual travel plans may provide an indicia of reasonable suspicion."), *United States v. Kopp,* 45 F.3d 1450, 1453 (10th Cir. 1995) (finding that suspicious travel plans, inconsistent answers, and nervousness were sufficient to constitute reasonable suspicion)).

7

Deputy Olson also discovered that the Tahoe had been rented the day before the stop and was due back in California on December 22, 2017. When asked about these circumstances, Defendant said she was returning the Tahoe in Chicago and had worked out some way to avoid paying extra for a one-way rental because she did not have the money. This response factored into Deputy Olson's suspicion because when asked if she was going to be charged extra for dropping it off in Chicago, Defendant said she was and would probably be charged an additional day of rent. Under the totality of the circumstances, Defendant's responses and behavior provided sufficient reasonable suspicion for the canine sniff.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation, ECF No. 37, are adopted in their entirety;

2. The Amended Motion to Suppress filed by the Defendant Ebony Douglas, ECF No. 18, is denied; and

3. Defendant's Objections to the F&R, ECF Nos. 38 and 39, are overruled.

Dated this 19th day of November, 2018.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge